IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MAASS FLANGES CORP., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-13-1090 |
| | § | |
| TOTRAN TRANSPORTATION SERVICES | § | |
| INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This is a property damage case under the Carmack Amendment, 49 U.S.C. § 14706. The defendants, Totran Transportation Services, Inc. and Totran Transportation Services, Ltd. (together, "Totran Transportation"), have moved for a summary judgment ruling that the damages the plaintiff-owner of a boring mill, Maass Flanges Corp., may recover are no more than $8,900. (Docket Entry No. 16). This amount represents the difference between the purchase price Maass Flange paid for the boring mill ($14,500) before it was damaged during shipment, and the amount received at public auction after the damage to the mill occurred ($5,600). Totran Transportation also seeks a summary judgment ruling that Maass Flanges is not entitled to recover lost profits as special or consequential damages. Maass Flanges has responded, urging that the limits on damages Totran Transportation proposes do not apply given the evidence in the record, and that there are genuine factual disputes material to determining the damages it may recover. (Docket Entry No. 20).

Totran Transportation's motion raises two issues. The first is whether a plaintiff property-owner's actual damages under the Carmack Amendment are limited to the difference between the price it paid for the cargo before it was damaged and what was received at the salvage sale after the

damage, or whether the plaintiff may recover a higher amount based on evidence that what it paid for the cargo was below market. The second issue is whether the plaintiff may recover special or consequential damages, specifically, lost profits it claims resulted from its inability to use the property because it was damaged.

Based on the pleadings, the motion and response, the record, and the applicable law, this court denies the summary judgment motion in part and grants it in part. The court denies summary judgment limiting Maass Flange's actual loss recovery to its purchase price less the salvage value, and grants summary judgment that Maass Flange may not recover special or consequential damages. The reasons are set out below.

**I.     Background**

The plaintiff, Maass Flange, manufactures and produces stainless steel and alloy flanges. In mid-February of 2013, Maass Flange purchased a used Froriep Machine Type KE 16 Super Vertical Boring Mill (the "Mill"), originally built around 1965, to use at its Houston, Texas facility. Maass Flange paid the invoiced price, $14,500.00. (Docket Entry No. 16, Ex. A). The seller was located in Edmonton, Alberta, Canada. Maass Flange contracted with Totran Transportation to have the Mill shipped from Edmonton to Houston. The Mill was delivered to Totran Transportation in good condition. On February 28, 2013, Totran Transportation issued a Bill of Lading, noting no exceptions or damage to the Mill. (*Id.*, Ex. B). A U.S. Department of Customs and Border Protection entry form completed for the shipment stated the value reported by the "importer" as $10,000. (*Id.*, Ex. C). Maass Flange was the importer but denies that it completed the form. (Docket Entry No. 20 at 2 n.1). The record is unclear whether Maass Flange provided the information used for the form.

The Mill was damaged when it struck an overpass near Denton, Texas. Totran

Transportation asserts that the route was designated by the Texas Department of Transportation for oversized loads. (*See* Docket Entry No. 16, Ex. D). Maass Flange asserts that Totran Transportation failed to measure the Mill's height correctly and that the Mill exceeded the clearance height. Totran Transportation asserts that the top of the Mill "scraped" the overpass; Maass Flange asserts that the top of the Mill "struck" the overpass.

The Mill was delivered to Maass Flange's facility in Houston, Texas in a damaged condition, and Maass Flange refused to accept it. (Docket Entry No. 16 at 2). The Mill was moved to the Totran Transportation facility in Houston and later sold as unclaimed freight at auction for $5,600. (*Id.*, Ex. E). The amount was inadequate to offset handling, storage, and auction expenses. (Docket Entry No. 16 at 2).

On April 17, 2013, Maass Flange filed this suit. (Docket Entry No. 1). The Carmack Amendment governs. Totran Transportation has moved for summary judgment seeking to limit Mass Flange's damages to $8,900 as a matter of law. (Docket Entry No. 16). That figure is the purchase price for the Mill less the amount received at auction. Maass Flange responds that there are genuine fact disputes about the amount of actual loss from the Mill's damage that preclude summary judgment. (Docket Entry No. 20). Maass Flange recognizes that the limitation of liability clause contained in the Bill of Lading precludes any damage award above $103,000.00 ($2.00/pound multiplied by 51,530 pounds). (*Id.* at 3 n.3).

The summary judgment evidence includes exhibits submitted by both parties. Totran Transportation's exhibits include the invoice to Maass Flange for the Mill's purchase from Pacific Industries, Inc.; the Bill of Lading; the Customs Entry Form; a Texas Department of Transportation summary of the approved route; documents reflecting the sale at auction; and an email showing that a company was interested in purchasing the Mill, which would have allowed Totran Transportation

3

to sell the Mill without incurring auction fees. (Docket Entry No. 16, Exs. A–G). Maass Flange's exhibits include a declaration from Alexander Maass describing the purchase of the Mill and damages Maas Flange suffered from the Mill's damage; the Bill of Lading; a Totran Transportation incident report describing how the Mill was damaged; an appraisal of the Mill dated May 24, 2013; and price quotes for similar boring mills. (Docket Entry No. 20, Exs. A–E)

## II.     The Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." FED. R. CIV. PROC. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . ." FED. R. CIV. PROC. 56(c)(1)(A). "[T]he plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact." *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012) (citing Celotex, 477 U.S. at 323). If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).

"A fact is 'material' if its resolution in favor of one party might affect the outcome of the

lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response." *Duffie*, 600 F.3d at 371 (internal quotation marks omitted).

"When the moving party has met its Rule 56[] burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Id.* The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Id.* (internal quotation marks omitted). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc)). "In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party." *Duffie*, 600 F.3d at 371.

**III.     Analysis**

    **A.     Damages under the Carmack Amendment**

Under § 14706 of the Carmack Amendment, "[a] carrier providing transportation or service" as well as "any other carrier that delivers the property and is providing transportation or service" are liable "for the actual loss or injury to the property." 49 U.S.C. § 14706. A carrier's liability includes reasonably foreseeable damages resulting from the breach of its contract of carriage. *See Nat'l Hispanic Circus, Inc. v. Rex Trucking, Inc.*, 414 F.3d 546 (5th Cir. 2005). Totran is a carrier under § 14706.

To prevail under the Carmack Amendment, the plaintiff must show that: (1) it delivered the goods to the carrier in good condition; (2) the goods arrived in a damaged condition; and (3) the

shipper suffered damages of an ascertainable amount. *See John Case Morrell & Co. v. Frozen Food Express, Inc.*, 700 F.2d 256 (5th Cir. 1983). Although the Carmack Amendment does not require the shipper to prove that the carrier was negligent, the issue raised by the summary judgment motion is not liability, but damages.

### B.     Damages for Actual Loss

The first issue is whether the damages for actual loss Maass Flange may recover are limited to the difference between the price it paid for the Mill ($14,500), and the price received at the salvage auction sale ($5,600), as Totran Transportation contends. Maass Flange responds that under the Carmack Amendment, the court should calculate damages in accordance with the fair market value of the Mill if it had been delivered to Houston, Texas undamaged, not the actual price Maass Flange paid for the Mill (at least, not if it was lower than the fair market value).

The general damages measure under the Carmack Amendment is actual loss, which represents "the difference between the market value of the property in the condition in which it should have arrived at its destination and its market value in the condition in which it did arrive," minus salvage value. *Contempo Metal Furniture Co. of Calif. v. E. Tex. Motor Freight Lines*, 661 F.2d 761, 764 (9th Cir. 1981); *Mineral U.S. Inc. Exam-Met Div. v. M/V/ Moslavina*, 46 F.3d 501 (5th Cir. 1995); *see also Fredette v. Allied Van Lines, Inc.*, 66 F.3d 369, 372 (1st Cir. 1995) (stating that actual loss is "ordinarily measured by the reduction in market value at destination or by replacement or repair costs occasioned by the harm"). The issue in this case is how to measure the Mill's fair market value before it was damaged. Neither side disputes that fair market value should apply; the dispute is whether that value is limited to the purchase price. Totran Transportation asserts that the purchase price is the only reliable measure of fair market value in this case, and that any other value would be speculative. (Docket Entry No. 16 at 5). Maass Flange asserts that the purchase price

need not be the exclusive measure when there is competent summary judgment evidence of a different and more reliable or accurate fair market value. (Docket Entry No. 20 at 5–8).

Totran Transportation cites *Carmar Corp. v. Preston Trucking Co., Inc.*, 18 F. Supp. 2d 112, 115 (D. Mass. 1998), *aff'd, Carmar Corp. v. Preston Trucking*, 221 F.3d 271 (1st Cir. 2000). In that case, which involved surplus equipment purchased from the Navy for resale, the court found the purchase price was an appropriate measure of damages. Given the evidence in the case, the court concluded that another measure of fair market value would be speculative. In affirming the district court, the First Circuit noted that the shipper's evidence of "past" sales of similar goods did not "identify any prospective purchasers for the lost [or] used equipment at prices like those paid for the previously sold equipment." *Carmar Corp.*, 221 F.3d at 277. The court also noted a lack of essential information about the equipment's condition. *Id.* In contrast to the plaintiff in *Carmar Corp.*, Maass Flange has submitted competent evidence showing that the market value for the Mill when it was to have been delivered in Houston was higher than the invoice value. The evidence includes an appraisal by a certified appraiser, Ronald Braman, C.E.A. – A.M.E.A. (Docket Entry No. 20, Ex. D). Braman opined that the Mill's fair market value was $72,500.00. *Id.* The record includes evidence that the appraised value was consistent with values for similar mills available (or previously available) on the market for sale. The record also includes evidence of other mill sales. (*Id.*, Ex. E). Given the evidence, there is no basis to find that the purchase or invoice price is the exclusive measure of the Mill's fair market value before it was damaged. *See Paper Magic Group v. J.B. Hunt Transp.*, 318 F.3d 458, 461 (3rd Cir. 2003) (noting that damages may be based on invoice value when that "conforms to the market value of the [goods] at the time they should have been delivered."); *Nat'l Hispanic Circus, Inc.*, 414 F.3d at 552–53 (5th Cir. 2005) (stating that replacement cost may be a legitimate measure of actual-loss damages under the Carmack

Amendment).

The conflicting evidence as to fair market value in this record does not permit a ruling that, as a matter of law, Maass Flange's damages for its actual loss are limited to the invoice price paid less the salvage value. Summary judgment on this first issue is denied.

### C. Special Damages

The second issue is whether Maass Flange may recover special or consequential damages. Totran Transportation moves for summary judgment that no such recovery is permissible in this case because Totran Transportation did not have notice of special circumstances giving rise to such damages when the Bill of Lading issued. (Docket Entry No. 16 at 6–7). Under the Carmack Amendment, a shipper may recover special damages, including loss profits, under certain circumstances. *See Contempo Metal Furniture Co. of Cal. v. E. Tex. Motor Freight Lines, Inc*., 661 F.2d 761, 765 (9th Cir. 1981). "Special damages are those that a carrier did not have to foresee as ordinary, natural consequences of a breach when the contract was made." *Id*.

Neither the Bill of Lading nor the freight-broker documents in the summary judgment record note any circumstances that could give rise to the recovery of special or consequential damages. Maass Flange relies on the facts that it was a manufacturer of flanges and that the Mill was to be transported to its facility in Houston, Texas to show that Totran Transportation had notice that Maass Flange's inability to use the Mill would result in lost profits. Maass Flange has submitted summary judgment evidence in the form of declarations that it purchased the Mill to use in its facility and that it has incurred $1,400 per week in lost profits because it could not do so. (Docket Entry No. 20, Exs. A, B).

The evidence Maass Flange presents is inadequate to support the recovery of lost profits. If such evidence was sufficient to impose liability for consequential damages on a carrier, virtually

every shipment to any kind of manufacturing or similar facility would expose the carrier to such damages. The cases do not indicate such a relaxed standard. To the contrary, the cases require notice of special damages to allow the carrier to protect itself from exposure by "negotiating special contractual terms, declining the shipment, or taking special precautions to avoid the loss." *Contempo Metal Furniture Co.*, 661 F.2d at 765.

The summary judgment evidence in this case is clear that Maass Flange cannot recover more than its actual losses; special or consequential damages are not recoverable. Summary judgment is granted on this issue.

### III.    Conclusion

The motion for summary judgment limiting Maass Flange to actual loss damages based on the purchase price less the salvage value is denied. The motion for summary judgment precluding Maass Flange from recovering special or consequential damages is granted.

SIGNED on January 2, 2014, at Houston, Texas.

Lee H. Rosenthal
United States District Judge